Mr. Markey, please proceed. Good morning. Nicholas Markey, on behalf of Jared Marcum, may it please the court. This is an appeal from the Eastern District of Washington, a trial that Mr. Marcum went through in which he was found guilty on two counts of possession with intent to distribute, a count of possession of a firearm and furtherance of drug trafficking, and a felon in possession of a firearm. Procedurally, the case proceeded to trial on the first three counts. The fourth count was bifurcated and tried to the same jury after the conviction on the first two counts. In addition, the court, Mr. Marcum was found guilty of all counts. He was also, he was sentenced to 300 months and he was also sentenced to 24 months on a supervised release violation from his prior federal conviction. In the course of the appeal, we've raised numerous issues on appeal. However, I'll focus my attention on the suppression issue, the motion in limine, a brief, briefly on the shackling issue, and the final issue, which was briefed in supplemental proceedings, the conviction for the felon in possession and the change in the law that has occurred. As to the suppression issue, the District Court found that Mr. Marcum lacked standing in the vehicle. The facts laid out in that case were that Mr. Marcum and his friend, Ms. Torres, were driving in a Cadillac in Eastern District of Washington, Kennewick, Washington, when officers noted the vehicle and then pulled the vehicle over on the basis of a warrant for the driver. Now, the District Court determined that Mr. Marcum lacked standing. It is our position that he did not lack standing because he did have an expectation of his privacy rights in the fact that in the glove compartment where the drugs were found and the firearm were also his prescription pills. And it is our position that that is sufficient enough to extend privacy expectation. What is your best case that would say that that having that a passenger's pills in the glove compartment give the passenger standing to challenge a stop of the vehicle? I don't know that I have a best case for that, Your Honors. I believe that we've cited some of the case law in there giving the expectation for privacy. The question is, I guess I would argue it to this extent in that this isn't a situation where we're talking about possible bills, envelopes, wage stubs, and things like that in the glove box, but instead prescription drugs which would elevate it above that limited issue of an expectation of privacy. Again, there were no, that is our position. It may be a stretch and I understand that. As to the issue on the motion eliminating, we, strike that, there was also an issue that we raised in, I believe, our briefing and in our reply, that there was also the issue of the officers maintained in the district court maintained that there was a reasonable suspicion to pull over the Cadillac because the driver had a warrant. However, the testimony or the the documents that were submitted at the suppression hearing established that the officers couldn't see who was driving the vehicle and therefore we would say because the judge relied on an implication or implying that it was Ms. Torres when they couldn't verify it, that that was not enough reasonable suspicion. Counsel, let me ask you a question on that, on that argument. There just has to be reasonable suspicion, not certainty, right? That is like a Terry stop standard. Did that be in the case, why is it not reasonable for police to suspect that the driver of a car that's owned by a person who has a warrant without saying anything against them, is in fact that person? There is that argument, Your Honor, and I would concede is if the registered owner of the vehicle is not, is the driver, then isn't that sufficient? In this case, we would say that there's got to be, in this case as to the facts, something more in that they relied on the fact that Ms. Torres had a warrant for her arrest and, but they didn't know that she was driving the car because they couldn't see it. And there was, in the documents that were submitted, the officers did know Ms. Torres. Right, I think the question is whether they can, they can reasonably infer that the owner of the based on the license plate check, you know that the car's owner had an outstanding warrant. Can you reasonably infer that that owner was the driver? Do you have cases that suggest otherwise? No, I don't, Your Honor. I think you can't reasonably. Also, if they could see in the car and they could see that the person driving looked like Hulk, Hulk Hogan or something and wasn't Ms. Torres, who they knew, then I could see the argument that the warrant. And that's kind of where I'm going. They can't, if they could see that it was Hulk Hogan, then they wouldn't have the reasonable suspicion. I think that would be a fair argument, but if the windows are tinted and they can see nothing, then what's the basis for saying they can't suspect it's the owner? Well, anyway, that's the argument. Yes, moving to the motion and eliminate, Your Honor, when we proceeded to trial, there were several motions eliminated that district court ruled upon, and one was the the arrest that had occurred in Kennewick about seven months prior to that in which Mr. Markham was arrested, and they searched the residence and they found a gun and drugs there. We moved to exclude those as well as photographs of Mr. Markham when he was arrested at the scene, and we maintained a continued objection. Our argument that those items from the Kennewick arrest at the number two... I thought it was seven weeks. Seven months, I believe, Your Honor. And then two was the the nature of the offenses. Now I know the government argues that, well, it was a gun. It was drugs with a gun. However, that was a search with a search with a consent. The other arrest in the Cadillac was an automobile search, so we would argue that there on those items, the gun and the drugs from the apartment arrest should not have been submitted or should not have been admitted. The other issue we had, Your Honors, was with the the photograph of Mr. Markham in cuffs at the scene with officers around him, and we argued to the that it wasn't relevant to proving the charges of the crime. Number two, that it was so prejudicial in the sense that it shows him in a cuff with officers around him implying that he's already guilty. Again, the court ruled that that was admissible. Again, we indicated that... Did the court read the appropriate limiting instructions when the evidence was introduced? The court did. The court did, but I think the fact in that case where you have a defendant in handcuffs surrounded by police officers, that could overweigh the court's limiting instructions. I concede. Every time that I got up and objected, the court would read the limiting instruction. We also raised issue with the shackling of Mr. Markham during the course of the proceedings. Is there any indication in the record that the jury was aware of the shackling? Nothing in the record, and from my understanding, after the trial from the marshals, there was no indication they were aware of that at all. I believe that the district court was very good at making sure that they couldn't find out. I had been in another trial with the same thing in Eastern Washington where we used the same apparatus. But the question comes into is, does that shackling overweigh a defendant's right to the presumption of innocence regardless of whether the jury knew or not? And here the court based its decision on the fact that Mr. Markham had been determined to be a problem inmate at several of the facilities that he had been housed. However, in none of the proceedings that I had with Mr. Markham, nor when I looked at the record, did he ever act out in court? He was never disrespectful in court. He never shouted in court or any of those things. We don't think that there was a sufficient factual basis that would warrant the shackling. The final issue that we've brought up, and that was in the supplemental briefing, was Mr. Markham was convicted of a felon in possession of a firearm. As this court is aware, under Real F.B. United States, the Supreme Court changed the playing ground of felon in possession of charges by adding the additional element that the individual who is in possession of the firearm must know that he is a category of class that is precluded from having it. So then it issues a knowledge element or a fourth element. It's our position that because this matter has been proceeding and was not raised at the trial level because the decision had not come out, but because that decision has come out, that the conviction on count four should be remanded to the court because of that new change in the fact that your client had been previously convicted of felon in possession. He has, Your Honor. He has. And I'm aware that the government relies on the most recent Ninth Circuit case that state that if there are prior convictions of the defendant, then the knowledge element is proven. But in this case, I guess the question you get to is, if the jury doesn't hear that fact... You didn't want the jury to know that your client had been previously convicted of felon in possession, did you? No. Okay. No, I did not. But he had been. He had been. He'd done ten years on that, and I agree. That's why I'm saying, I guess, you know, I think it's a four-part standard. I believe the two parts of the test are met where it is an error and clear error. The question does come down to, is there a I don't know at this point. Does it affect the decorum of justice? Well, you come into a situation where I don't know if you could ever say that the probability of the outcome is going to be changed when it becomes an element, a new element is given on a crime because the government can only show, like in this case, well, he had a prior conviction. We'd ask that the matter on count four be remanded. That's all I have. Thank you, Mr. Marchi. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Scott Meisler from the Department of Justice on behalf of the United States. Unless the Court has any opening questions, I was just going to address kind of seriatim the arguments that Mr. Markham has raised. I'm going to start off with the defendant. On the motion to suppress issue, we agree with Judge Gould's observation that the standing law is pretty well settled, that a passenger in a vehicle has standing under the Fourth Amendment to object to the stop, which Mr. Markham has properly raised, but does not have standing to separately challenge a search of the vehicle's interior. So here he does not have standing to raise the inventory search challenge that he  interior. The evidence that the defendant has provided for the search and polium cases properly limited the scope of the Fourth Amendment challenge to the stop itself. Now on the stop, we are perfectly content to have the Court proceed forward along the lines of colloquy that the Court had with opposing counsel and join the vast majority of circuits that have considered the issue and hold that officers' knowledge or the return of information from a database indicating that the registered owner of a car has an outstanding search warrant provides reasonable suspicion to conduct a brief investigatory stop of the car. I do want to be candid with the Court, though, as we were in our brief, that a very similar issue is pending before the U.S. Supreme Court in a case called Kansas v. Glover. We put this in a footnote in our answering brief. Glover was actually argued yesterday before the Supreme Court. And we think that no matter how the Court rules, affirmance would be in order in this case. So I'll explain briefly, if I can, just what we think the difference between this case and Glover is. But I did want to mention it to the Court because as a matter of prudence, the Court may wish to hold the case in abeyance or withdraw it from submission pending Glover if the Court is concerned that something the Supreme Court said could affect its decision here. And so we think that this case is Glover because Glover involves a scenario where the information the police learned from running the license plate was that the registered owner was an unlicensed, had a suspended driver's license. And so the inference that the police were required to draw there is that the person was acting unlawfully, that the person, that the unlawful act was the actual sitting of the unlicensed driver in the driver's seat. This case is easier for us because the only inference that the police have to be able to draw is that the registered owner is an occupant of the vehicle. We don't have to place the owner behind the wheel in order for officers to reasonably stop the car to investigate whether an occupant is the subject of an outstanding arrest warrant as Ms. Torres was here. So that is to say that we think no matter how the Supreme Court rules in Glover, that affirmance would be in order here, that the rules set by the Sixth Circuit in the Piles case in our brief should stand. But if the court is concerned in any way that the Supreme Court's resolution of Glover could affect its Fourth Amendment analysis, then we'd have no objection to the court holding this case in abeyance pending the resolution of Glover. On the motion in limine on the 404B, the admission of the prior act's evidence, Judge Collins, I believe you are correct as a factual matter that the prior drug and gun possession incident occurred seven weeks, not seven months, before the arrest that led to Mr. Markham's prosecution. The first incident at the apartment building occurred in the first week of August 2014, and the search of the car and arrest of Mr. Markham giving rise to these federal charges took place on any case law from this or any other circuit that would deem seven weeks between two incidents too remote in time. In fact, as we've indicated in our brief, this court has found a sufficient temporal connection where the incidents occurred years apart, two or three years apart. So seven weeks is quite close in time. And I think given the abuse of discretion standard of review and given the similarity of the two events, which I do want to underscore, Judge Shea acted well within his discretion in admitting this evidence. And on that similarity point, I did want to underscore that you have two incidents seven weeks apart in which the defendant was found possessing multiple kinds of controlled substances, two of which overlapped methamphetamine and heroin. Those controlled substances were found in portable cases. They were in close proximity to firearms. In the apartment search, the firearm actually fell out of the closet when someone reached up to grab the camera case out of the apartment closet. And in this case, of course, the gun was right next to the case housing the drugs in a glove compartment in the vehicle. So these are strikingly similar, and I'm not aware of any case law under this court that would require more similarity or a closer temporal nexus before a court can admit such evidence within its discretion. As to the photograph of Mr. Markham in handcuffs, we tried to indicate and explain in the brief here that it was especially unlikely to prejudice the jury because through the testimony of the officers who participated in both searches, the jury here had already learned that Mr. Markham had been arrested that day. So while we wouldn't urge the admission of photographs of defendants in handcuffs or defendants in jail garb as a matter of course, in this particular instance, we think it was both probative as to Mr. Markham's identity, which is a matter of permissible purpose under Rule 404B, and it was less likely to be prejudicial than it might be in the abstract because the jury already learned of the facts in Mr. Markham's arrest. And I would also just indicate there that we think given some of the strength of the evidence I described earlier, any error on this one piece of evidence would be harmless because, of course, the jury would elsewhere have learned about the circumstances of the August 1st apartment search and possession of firearms and drugs, and then had very strong evidence, including forensic evidence, at linking Mr. Markham to the gun, drugs, and drug paraphernalia found in the glove compartment on September 18th. On the shackling issue, I think Judge Nguyen asked the question of whether the jury was aware of the shackling. I don't believe there's any evidence in the record that the jury was aware as opposing counsel recognized. Judge Shea took great care to ensure that the shackles were neither visible nor audible to the jury, and the declaration from the marshal service that was attached to the government's motion in support of shackling explained the measures that the marshals indicated, including draping the tables, not just the defendant's table, but the government's table, so that's what the jurors would see. They would see two tables. They also brought Mr. Markham in and removed him from the courtroom after the jury so he wouldn't be paraded in front of the jury in shackles or handcuffs. He was not handcuffed in court at all, and of course the marshals again tried to mute the sound of the shackles and ensure it was only an ankle restraint so that his freedom of movement was not was limited as little as possible in the courtroom. The one point that Mr. Marshie did raise concerns about this, Judge Shea asked Mr. Markham to rise and asked Mr. Marshie and others in the court if they could hear the shackles. When they couldn't, he could decide to continue with that kind of shackling as it was, and of course he made specific findings on the record based on the information provided to him by the government and the marshal service and his familiarity with some of the disciplinary problems Mr. Markham had had during pre-trial housing. I did want to mention that in response to Mr. Marshie's observation that Mr. Markham hadn't been disruptive. I think there's no kind of one free bite, one free disruption rule in these situations when an inmate has been disruptive, violent outside of court. Courts are free to take that into account, I think preemptively, to ensure that that kind of behavior does not carry over into the courtroom. And the Gonzalez case that Mr. Marshie cited, which involved a stun belt not shackles, supports that point. I think that the problem, the reason this court vacated and remanded in that case was because no judge had made findings that shackling or a stun belt there was necessary. Here we have specific findings by Judge Shea at the pre-trial stage, and then again when Mr. Markham was shackled in the same manner at sentencing, where no jury was involved, Judge Shea reiterated his findings at the sentencing hearing. So no absence of findings, and again, I think robust record of disciplinary problems that supported the court's determination. The last claim that Mr. Markham emphasized here today was the intervening change in the law effectuated by the Supreme Court's decision in Rehaif versus the United States. We submitted supplemental briefing, and importantly, a 28-J letter to this court in September, bringing to the panel's attention the decision in Benamor, United States versus Benamor. And as Judge Collins indicated, I think Benamor is squarely on point. It arises in the same plain and holds that when a defendant has prior convictions that exceed a year, especially when those include prior convictions for being a felon in possession, it's very hard to conclude that a jury would find in his favor on the knowledge question that Rehaif raises. I did just want to emphasize that in this case, because of the bifurcation procedure that Judge did not stipulate to the convictions, as many defendants do, the record here actually does include and the jury actually did know the nature of his convictions. They didn't know all the details of them, but Government Exhibit 37, which is at the end of volume two of our supplemental excerpts of record, indicates, lays out the four counts of his 2004 federal charges. The jury knew he was convicted of two counts of being a felon in possession, and also knew that he served well more than a year for those because the judgment indicated 36 months on one count, 120 months on the other count. So we think, again, under the logic of Benamor and under the information that was before the jury in this case, there's no reasonable probability of a different outcome had the jury been instructed on the missing element. And certainly under the fourth prong of the plain error test, it would not undermine the integrity of the proceedings to affirm a conviction that includes such strong evidence. And I'm happy to yield my time back to the court unless there are other further questions. I have no questions. Thank you very much. No questions. Thank you. Okay, Mr. Mark. You have some? No rebuttal, Your Honor. Okay, great. I want to thank both counsel for their arguments. And I think Mr. Meisler probably gets the award for having come the farthest today. We appreciate that. And Mr. Markey, we appreciate your holding up the high advocacy skills of Seattle lawyers too. Oh, they are. Thank you, Your Honor. Thank you. Okay, that case shall be submitted. I think that's our last one.
judges: Gould, Nguyen, R. Collins